IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DOUGLAS DILLS,                        )
                                      )
                    Plaintiff,        )
                                      )
            v.                        )        Civil No. 09-1380-JE
                                      )
MICHAEL J. ASTRUE,                    )        OPINION AND ORDER
Commissioner of Social Security,      )
                                      )
                    Defendant.        )
_____ )


        Tim Wilborn
        P.O. Box 2768
        Oregon City, OR 97045

                Attorney for Plaintiff

        Dwight Holton
        U.S. Attorney
        Adrian L. Brown
        Asst. U.S. Attorney
        1000 S.W. 3rd Avenue, Suite 600
        Portland, OR 97204-2904

                Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Douglas Dills brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Plaintiff seeks an Order remanding this action to the Social Security Administration (the Agency) for an award of benefits.

For the reasons set out below, the decision of the Commissioner is affirmed.

## **Procedural Background**

Plaintiff filed applications for DIB and SSI on September 20, 2004, alleging that he had been disabled since August 26, 2004, because of an injury to his spinal cord and leg, problems with his right arm, and with his vision. After these applications were denied initially and upon reconsideration, plaintiff timely requested a hearing before an Administrative Law Judge (ALJ).

A hearing was held before ALJ Verrell Dethloff in Bellingham, Washington, on October 16, 2006. On January 12, 2007, ALJ Dethloff issued an opinion finding that plaintiff was not disabled within the meaning of the Social Security Act (the Act). That decision became the final decision of the Commissioner on May 4, 2007, when the Appeals Council denied plaintiff's request for review.

Plaintiff appealed the denial of his applications to this court. Dills v. Commissioner of Social Security, 3:07-CV-00972-AC. In a decision filed on October 10, 2008, the Honorable Magistrate Judge John Acosta recommended that the action be remanded to the Agency for further proceedings. The Honorable Robert E. Jones adopted Magistrate Judge Acosta's recommendation in an Order filed on November 6, 2008.

Following the Appeals Council's subsequent remand of the action, a hearing was held before ALJ Gary Elliott on June 12, 2009, in Medford, Oregon. Plaintiff and a vocational

expert (VE) testified at the hearing.  On July 8, 2009, ALJ Elliott issued a decision finding that plaintiff was not disabled within the meaning of the Act.  That decision became the final decision of the Commissioner on September 21, 2009, when the Appeals Council denied plaintiff's request for review.  In the present action, plaintiff seeks review of that decision.

### Factual Background

Plaintiff was born on August 13, 1971.  He was 33 years old at the time of his alleged onset of disability, and was 38 years old at the time of the ALJ's decision following the second hearing.  Plaintiff graduated high school, and has past relevant work experience as a forklift operator, a janitor, and a convenience store clerk.

Plaintiff alleges that he is disabled by a combination of impairments, including osteoarthritis, an injury to his right arm, degenerative disc disease of the spine, and residual impairments from surgeries to his lumbar and cervical spine.

Plaintiff's medical record will be addressed below in the context of the parties' arguments.

### Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.

If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

**ALJ's Decision**

At the first step of his analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability.

At the second step, the ALJ found that plaintiff's medically determinable impairments included degenerative disc disease of the lumbar spine, status post-laminectomy on the right at L5-S1; degenerative disc disease of the cervical spine, status-post cervical decompression at C5-6; sciatica; and status-post right arm injury.

At the third step, the ALJ found that plaintiff's impairments did not meet or equal any listed impairment.

The ALJ next evaluated plaintiff's residual functional capacity (RFC).  He found that plaintiff retained the capacity to perform a reduced range of light work.  The ALJ found that plaintiff had the capacity to

> Lift and carry 20 pounds occasionally and 10 pounds frequently, sit for six hours per eight-hour day, and stand and/or walk for two hours per eight-hour day, with sit/stand option and the ability to change position every 20 minutes. The claimant is restricted from climbing or balancing, and is limited to occasional stooping, kneeling, crouching, and crawling.  The claimant is limited to occasional overhead work bilaterally.

At the fourth step of his disability analysis, the ALJ found that plaintiff could not perform any of his past relevant work.

At the fifth step, the ALJ found that, considering his age, education, work experience, and RFC, plaintiff could perform jobs that existed in substantial numbers in the national economy.  Based upon the testimony of the VE, he found that such work included table worker, assembler, and hand stuffer positions.  Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act.

**Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted

or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ erred in failing to properly consider his limited ability to use his dominant right hand; failed to properly apply the medical-vocational guidelines set out at 20 C.F.R. § 404, Subpart P, Appendix 2, as a framework of analysis; and failed to pose to the VE a vocational hypothetical accurately setting out all of his limitations and restrictions.

## 1. Evaluation of Plaintiff's Dominant Hand

At plaintiff's second hearing, held on June 12, 2009, plaintiff testified that his right arm shakes most of the day, that he has ongoing pain in his right shoulder, and that he has

difficulty gripping a pen.  He further testified that it is difficult for him to push the keys on a keyboard because of ongoing pain, numbness, and weakness in his hands.

In his first hypothetical, the ALJ asked the VE to consider an individual of plaintiff's age, who had plaintiff's education and experience, and who could occasionally lift 20 pounds and frequently lift 10 pounds, was limited to standing or walking for about two hours in an 8-hour day, could sit for about 6 hours in an 8-hour day, should have a sit/stand option allowing for a change of position every 20 minutes, and who could not climb or balance, and who was limited to occasional stooping, kneeling, crouching, and performing overhead work. The VE testified that such an individual could not perform plaintiff's past relevant work, but could work as an assembler, table worker, or stuffer/filler.

In his alternative hypothetical, the ALJ asked the VE to consider the limitations imposed in his first hypothetical, and a limitation to occasional handling and fingering with the dominant right hand.  The ALJ asked whether the VE could "identify any jobs in the U.S. or regional economy" that an individual with these additional limitations could perform. The VE testified that this additional restriction would erode "a competitive work base in a sedentary work range because those jobs are going to, and especially production jobs, rely on repetitive bimanual activity on a frequent basis, if not constant throughout the course of the day.  So, no, not those jobs nor any other jobs in the sedentary work range."

The RFC that the ALJ ultimately applied in his decision did not include the additional limitations on use of the dominant hand set out in the second hypothetical.  Instead, the ALJ found that plaintiff's testimony concerning his right hand and arm was not supported by the clinical evidence.  As an example of evidence that plaintiff's use of his right hand was not limited as he had testified, the ALJ cited EMG studies in March, 2008, which were normal and showed no evidence of carpal tunnel, neuropathy, or radiculopathy, and nerve conduction studies performed in September, 2008, which were also normal.  The ALJ noted that Dr. Goldman had observed that plaintiff's "reported complex constellation of symptoms have been confusing to him as well as three neurologists," and cited emergency department

examiners' reports that plaintiff's complaint as to the location of his pain and numbness did not "correlate anatomically. . . ."  The ALJ noted that Dr. Oscar Sanchez  had "questioned whether the claimant was embellishing his examination," and that, after conducting tests and reviewing plaintiff's records, Dr. Sanchez had "explained to the claimant that his reported symptoms are out of proportion."  He noted that the record did not "reflect observations of the claimant's reported hand shaking." The ALJ added that Dr. McCallum's evaluation of plaintiff's residual functional capacity, which plaintiff had cited to the ALJ in support of his applications for benefits, had been prepared <u>before</u> plaintiff had undergone surgery, that Dr. McCallum had recommended reevaluation in 90 to 120 days, that Dr. McCallum's findings did not fully support plaintiff's complaints, and that Dr. McCallum's findings were inconsistent with the findings made by Dr. Sokol only one month earlier.

The ALJ addressed plaintiff's testimony concerning the severity of the limitations in his right arm and hand in the context of his discussion of plaintiff's credibility, and clearly concluded that a credibility assessment was important in evaluating those limitations. The ALJ noted that, in his review of plaintiff's appeal of the denial of his applications, Magistrate Judge Acosta had concluded that the first ALJ had provided "clear and convincing reasons to find the claimant less than fully credible as to the extent of his limitations." Like the first ALJ, ALJ Elliot found that plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the ALJ's RFC assessment.

Plaintiff cites medical evidence supporting the conclusion that his right hand is impaired, and contends that the ALJ failed to provide the requisite support for his rejection of the opinions of treating and examining physicians.  Plaintiff cites MRI and CT scans showing spinal pathology including stenosis, impingement, and degenerative disc changes, and tests showing decreased sensation and weakness in plaintiff's right shoulder and hand. He contends that the ALJ failed to properly address this evidence.

Plaintiff correctly notes that Drs. McCollum and Maxwell opined that plaintiff had a "stocking distribution of decreased sensation to pinprick and light touch in the right arm." However, as the Commissioner correctly notes, these doctors did not give any opinion as to functional limitations in plaintiff's right hand, and reported that "[t]he major feature of his examination is his marked non-anatomic pain behavior and symptom magnification." They added that plaintiff complained of pain in every part of the examination, and made "any definite assessment of any kind of neurological or orthopedic abnormalities practically impossible." Plaintiff asserts that he "had residual problems with numbness in his right arm." However, Dr. Goldman made no findings as to the source of that numbness or its functional limitations, but instead reported only that plaintiff continued to complain of numbness in his right arm, and noted that an MRI had been scheduled to try to determine "if there is any residual cord or root compression that could account for his residual symptoms." Other medical reports that plaintiff cites do note anatomical problems, and reports indicate that plaintiff complained of pain, numbness, and weakness in his right hand and arm. However, these records do not reflect testing of or opinions as to plaintiff's functional capacity.

The Commissioner contends that the ALJ did not reject the opinions of treating and examining physicians concerning "the existence of musculoskelatal impairments," but instead simply made findings as to plaintiff's "specific limitations," which the physicians did not make. He also notes that plaintiff's testing "includes negative results," and correctly observes that the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

Based upon my review of the medical record, I conclude that the ALJ's findings as to the extent of plaintiff's right hand limitations, which were made in the context of findings concerning plaintiff's credibility, are supported by substantial evidence in the record, and should be upheld here. Certainly, the medical record included evidence that plaintiff had

anatomical problems that could affect the use of his right hand and arm.  However, the ALJ is responsible for assessing a claimant's residual functional capacity, and the ALJ's assessment here did not contradict any medical opinions as to plaintiff's functional limitations.  In addition, to the extent that the medical records report plaintiff's complaints of pain, the ALJ's credibility findings are well supported, and reports in the medical record indicate that plaintiff's pain behavior made "definite assessment" impossible.  Under these circumstances, I conclude that substantial evidence supported the ALJ's resolution of ambiguities in the record.

## 2. **Eroded Occupational Base**

Where, as here, a claimant cannot perform any past relevant work, the Commissioner bears the burden of establishing, at step five of the disability analysis process, that other work which the claimant can perform exists in significant numbers in the national economy.  20 C.F.R. § 404.1560(c)(3).  If a claimant meets the requirements for work in one or more occupations, he is not disabled within the meaning of the Act.  20 C.F.R. §§ 404.1566(a) and (d); 416.966(a) and (b).

Plaintiff correctly notes that the ALJ found that he could perform only a restricted range of "light" work, and that, when asked whether an individual with plaintiff's residual functional capacity could perform any jobs, the VE identified only sedentary work.  Plaintiff argues that his ability to perform a full range of sedentary occupations was eroded by his inability to balance, and that proper application of  Social Security Rulings (SSR) 83-12, 96-9p, and <u>Distasio v. Shalala</u>, 47 F.3d 348 (9th Cir. 1995), requires that he be found disabled at step five of the disability analysis.

Social Security Ruling 83-12 provides, in part, that if a claimant's exertional level falls between two rules which direct opposite conclusions as to disability," if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of disabled."

Social Security Ruling 96-9p advises that "the rules and guidelines . . . require a conclusion of 'disabled' " for  most individuals who are age 50 or older and who are limited to the full range of sedentary work by their impairments, and that "a finding of 'disabled' usually applies when the full range of sedentary work is significantly eroded."   This Ruling also advises that "if an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base," and that "[c]onsultation with a vocational resource may be appropriate in some cases."  In Distasio, the court concluded that, though the ALJ found that the claimant could perform a limited range of "light" work, the claimant could perform only sedentary work, because the VE testified that he "could only perform what she believed were sedentary jobs."   Distasio, 47 F.3d at 349-50.  Because the claimant was "closely approaching advanced age" and could perform only sedentary work, the court concluded that he should have been found disabled under the "grids."  Id. at 349.

It is not clear whether the VE referenced in Distasio had simply identified only sedentary jobs in response to the ALJ's hypothetical (but may have also believed that plaintiff could perform some "light" level jobs as well), or whether she had explicitly testified that he was restricted to only "sedentary" level work.  Assuming that Distasio supports the conclusion that a VE's identification of only sedentary exertional level jobs in response to an ALJ's vocational hypothetical necessarily limits a claimant to sedentary work, neither that decision nor the Social Security Rulings plaintiff cites compels the conclusion that plaintiff here should have been found to be disabled.  Because the plaintiff here, unlike the claimant in Distasio, is not more than 50 years old, a limitation to sedentary work would not require a finding of disability under the "grids."

The Social Security Rulings cited above and Ninth Circuit decisions support the conclusion that the VE's testimony here provided substantial support for the Commissioner's decision.  Social Security Ruling 83-12 states that an ALJ should consult a "vocational resource" if "the extent of erosion of the occupational base is not clear," and indicates that

the assistance of a "vocational specialist" is "advisable" when a claimant's limitations are between two exertional levels and the determination of the level directs a different conclusion as to disability.  In <u>Moore v. Apfel</u>, 216 F.3d 864, 870-71 (9th Cir. 2000), the court held that "when a claimant's exertional limitation falls between two grid rules, the ALJ fulfills his obligation to determine the claimant's occupational base by consulting a vocational expert regarding whether a person with the claimant's profile could perform substantial gainful work in the economy."  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 960 (9th Cir. 2002).  Here, with a RFC analysis placing plaintiff between two work levels and an eroded occupational base, the ALJ's reliance on the testimony of a VE was proper.  The VE's testimony that plaintiff could perform certain work constituted substantial evidence that plaintiff was not disabled within the meaning of the Act.  <u>See Thomas</u>, 278 F.3d at 960-961; <u>Moore</u>, 216 F.3d 870-71.   The ALJ's reliance on VE testimony was consistent with SSR 96-9p, which, as noted above, advises that "consultation with a vocational resource" may be appropriate if a claimant's occupational base is eroded by balancing limitations.   The ALJ here engaged in that "consultation" by including plaintiff's balancing limitation in the vocational hypothetical posed to the VE.

3. **Adequacy of Vocational Hypothetical**

In order to be accurate, an ALJ's hypothetical to a VE must set out all of the claimant's impairments.  <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984) (<u>citing</u> <u>Baugus v. Secretary</u>, 717 F.2d 443, 447 (8th Cir. 1983)).  The ALJ's depiction of the claimant's limitations set out in the hypothetical must be "accurate, detailed, and supported by the medical record."  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1101 (9th Cir. 1999).  If the assumptions included in the hypothetical are not supported by the record, the VE's opinion that a claimant can work does not have evidentiary value.  <u>Gallant</u>, 753 F.2d at 1456.

Plaintiff contends that the VE's testimony that he could perform certain occupations has no evidentiary value because the ALJ "omitted Plaintiff's credible allegations, particularly the limitations related to handling and fingering with his dominant hand . . . ."

I disagree.  For the reasons set out in the discussion above, I conclude that the ALJ's residual functional capacity assessment, including his assessment of plaintiff's dominant hand, was supported by substantial evidence in the record.  The vocational hypothetical was also sufficiently accurate and detailed, and the VE's testimony accordingly had evidentiary value.

## **Conclusion**

The decision of the Commissioner is AFFIRMED.

DATED this 25th day of April, 2010.

/s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge

13 - OPINION AND ORDER